Mr. Mines. Good morning. Good morning, Your Honor. I'm here arguing an appellate defender case. The court will note that the original brief in the case and the reply brief were prepared by Melissa May, a former assistant defender, and I'm here arguing an appellate defender case. Back at the end of March, Melissa left after some eight years of practice. She's gone back into private practice, and as I understand it, intends to go to school also. We wish her the very best, of course, if only she had argued this case before going. Well, it's nice to have you here. Thank you. I'm here on behalf of Jason Phillips. Mr. Phillips was convicted of one count of criminal sexual assault based upon an act of digital penetration of a 15-year-old girl to whom he occupied a position of trust. That conviction followed a jury trial in Fulton County. After the conviction, the defendant was sentenced to a four-year term of imprisonment as the offense was a nonprobationable Class I. We've raised three issues on appeal, and with the court's permission, I'm just going to focus on one of those issues, the third that's presented in our brief. We do raise a question as to a reasonable doubt of guilt. We also raise an issue in regard to text messages. I believe those issues are really thoroughly covered in the briefs filed by Melissa. I'd like to spend my time this morning, if I could, upon the third issue, the issue focusing upon the introduction of a videotaped interview of the defendant by two Fulton County police officers. That taped interview, it was videotaped, was of the defendant in May of 2010, just a week or so after the complaining witness here had first approached the police. They had done the investigation and then called the defendant in. Their Miranda warnings were given and an interview was conducted, and a portion of that interview was ultimately played to the jury. Now, when the state brought in the videotape and were prepared to play it, the defense immediately objected, and they said two things. They said, first of all, there's no basis to admit this videotaped statement. The defendant has made no inculpatory statements whatsoever in his remarks to the police. They said, we don't have anything that the defendant said. What we do have is something that's completely prejudicial, and that is the officer's opinions, the officer's statements about all the evidence against the defendant. This should not be admitted. The state responded, although it responded somewhat evasively. They didn't suggest a basis for admission of the videotape. Instead, they said that it was produced in discovery, which of course it had been and had to be under Rule 413. They also said that the defendant should have filed a motion in limine, although obviously the court would have had the discretion to consider a motion in limine or even a motion to suppress that was brought during trial. The state also said, well, the prejudice was not as bad as it could have been because they didn't overemphasize the evidence that they had. And finally, officers are granted a considerable amount of leeway in conducting an interrogation. The court did not specifically address any of the points raised by either party. It simply allowed the tape to be played, at least in part, to the jury. There was a short instruction given after that portion of the tape was played. The defense returned to this point in its post-trial motion and strenuously argued that there was error in the introduction of that videotape interview. We continue to press that argument now on appeal. As it turns out, now on appeal, and for the very first time, the state gives us what they were asked to give in the trial court, and that is a basis for the introduction of this videotape interview. They tell us that it's a tacit admission. Now, generally speaking, a tacit admission involves a situation where a person is accused of a crime or hears an accusation of an element of the crime and then fails to deny it. And in those circumstances, that becomes a tacit or an implied admission of guilt. The failure to deny the accusation turns into an implied or a tacit admission of guilt. Well, the state advances this theory of tacit admission for the first time on appeal, and I'm going to call waiver, first of all. I've heard waiver argued repeatedly, I've seen it in state briefs constantly, and I guess I feel good about being able to say waiver myself. But I'm going beyond that, because here the waiver of the forfeiture made a difference. Both the court and the jury had specific tasks when a statement is admitted or is thought to be admitted as a tacit admission. The trial judge has a responsibility, and so too does the jury. The jury has to specifically find that the defendant heard it and understood it to be an accusation of crime. They have to find that he had the chance to respond, and they have to find, perhaps more importantly, that he acquiesced in the accusation. The trial judge at the same time must make a preliminary determination that a person in the defendant's position at that time would naturally have responded. So both the jury and the judge had things to do at that point. The state's failure to raise the tacit admission as a theory, as a basis for admission of this videotape, prevented both the judge and the jury from doing what they needed to do for the introduction of a tacit admission. But the court can affirm, for any reason... The court can affirm, but I respectfully suggest, Your Honor, that it's fundamentally unfair when the defense does not have the opportunity to address the tacit admission theory. They didn't have a chance to argue... Consciousness of guilt is a long-standing rule. Consciousness of guilt, but that consciousness of guilt in and of itself is not going to get something in. It's not going to be itself a basis for admission. Evidence of consciousness of guilt. Yes, and that's why flight evidence, for example, would come in. Providing a false exculpatory demonstrates a consciousness of guilt. The state cited Hart for a different proposition. Consciousness of guilt. And Hart went to the situation where the defendant was questioned by the police and he basically asked, what can you do for me if I confess? The point of the Hart case is that that was not a plea-related discussion, which would be inadmissible under Supreme Court Rule 402. The court went on to briefly address, but then put to one side, the notion of a tacit admission. But then there was an accusatory question by the police and an evasive answer. The evasive answer was independently admissible because when they accused him of a crime, the officer said, I know you did it. He said, okay, what can you do for me? If I confess, what can you do for me? That is consciousness of guilt. That is a statement indicating a consciousness of guilt that goes far beyond a tacit admission. Far beyond. Now the whole concept of tacit admissions is really, and that is the theory that was advanced for the first time here on appeal. Under the case law, and we've cited the Powell case for that proposition, the tacit admission theory is very rarely used in criminal cases and should be very rarely used. Now the Powell case gets into the discussion from Graham, and it's a lengthy discussion from Professor Graham. The court could have also cited McCormick because McCormick makes the same point. And that is that a tacit admission should be only rarely used, especially in the situation where it supposedly occurs in a custodial interrogation. Why is that? Well, the reason is because the defendant is given Miranda warnings at the beginning of that custodial interrogation. He's told that you have the right to remain silent. He's not told you have the right to remain silent unless there's an accusatory accusation in which case under the tacit admission rule you better respond. He's told that anything you say here can and will be used against you in a court of law. Well, actually it should also be told anything you don't say can and will be used against you in a court of law if there's an accusation and you don't adequately respond. The whole point is, the point of Powell, and it is the clear command of the case law, the tacit admission theory is very questionable. He gave an evasive answer. He gave an evasive answer. Well, the state gave an evasive answer, completely evasive answer, in terms of why this was to be introduced. They start talking about discovery when they're asked to produce a basis for admission. So evasive responses, he did not directly respond. I don't know that it was evasive in the sense of the Hart case, where when he was asked, we know you did it, and he asked, what can you do for me if I confess? It's certainly not evasive in that nature. They were talking about a relationship. He says, I have a relationship with a lot of people. They asked him, well, we're talking about more than that. It's a boyfriend and girlfriend. He says, I don't think we have that kind of relationship. I don't know that there is a lot of evasiveness in his responses, and it's certainly not the type of evasiveness that's shown in People v. Hart. Now, while there is nothing here, what I'm suggesting is that there was nothing in what was said by the defendant that is particularly probative on the concept of his guilt. What we do know, there was not much probative, but what we certainly know is that there was a great deal of prejudice. Because within that taped interview, the police over and over again referred to prior consistent statements made by the complaining witness. They talked about what she told them. They talked about what she had told the child advocacy center, which was not a matter of evidence because it was not admissible under 11510. They talked about she made allegations. They referred to her making heavy accusations. More specifically, they talked about multiple instances of inappropriate touching, which is what she ultimately testified to. So they're talking about prior consistent statements. What else? They're giving their opinion that the defendant is guilty. Now, it is in the context of this interrogation session, but they're telling, they're 100% certain. That's their language. We're 100% certain that something occurred. Something went too far. They're 100% certain of that. You can dance all you want to, but we know the truth. If you go to the courthouse, they're going to look at you like you're a liar if you keep telling this story. This is what they're saying. Obviously it's an opinion of the defendant's guilt. They reviewed the evidence in the case. Some of it had been admitted, some had not. They referred to the text messages that they had examined and ultimately came out. They talked about the heavy accusations that had been made. They talked about a statement that she had made to the child advocacy center, which no one ever heard anything about. So what we have here is that there was no, in looking at this videotape interrogation interview as a whole, there is no or little probative value and there is a boatload of prejudice. Thank you. No probative value, a boatload of prejudice. That videotape interview should not have been admitted. The defense protested from the beginning and they protested at the end. We continue to protest on appeal. We argue that if this met in the first instance, this court should reverse the conviction outright for the reasons we set forth in issue number one. And the court should, if not that, should go on to reverse the conviction and remand for a new trial, either singly or in combination because of the issue that I've addressed this morning and or the issue that we presented in regard to text messages. We do request relief in this case. Thank you, Mr. Michael. Thank you. Ms. D. Michael. May it please the court, counsel. I haven't decided to go back to school yet, so I'll be here arguing for this case. I'll focus on issue three as well because defense counsel has. First I'd like to focus on the limiting instruction that was given in this case. The trial judge developed a limiting instruction in consultation with defense counsel and it was quite extensive. The trial judge instructed the jurors that the questions or statements of the officers could not be considered for their truth, that police are trained to exaggerate or use deception in order to obtain confessions. The trial judge further instructed the jurors to disregard any comments made to induce a person to confess and also to consider only the responses and actions of the defendant. So in light of that instruction, it's clear that these statements were not offered for their truth and there's no hearsay issue, no confrontation issue, and no opinion testimony offered. Regarding the relevance argument, again there's no prejudice because the instruction was given as to the limited purpose and at worst it's harmless if the defendant claims that these statements were irrelevant, they'd say nothing. Regarding the waiver issue, defendant at trial argued that this tape was not admissible because it didn't contain an outright confession. The people broadly responded that the argument constituted evidence, so defendant's waiver cases are distinguishable. In Williams, the waiver occurred by not being argued in an opening brief under 341H7. In O'Neill, the people had made a specific objection and waived other objections and also didn't make the argument in their appellate brief. And Adams was a state appeal, so the court could only reverse on grounds that had been raised by the party. Also the trial judge, while he didn't explicitly state his reasons for admitting the tape, in admitting it he obviously found it relevant and he's presumed to know the law. So the people have argued that admissible is not hearsay as an admission by a party opponent, as stated in Aguilar, any and every statement of a defendant is admissible as an admission if otherwise relevant. The logic of the implied admission doctrine is that when a defendant's response is different from the natural reaction of an innocent person it may be considered incriminating. And here let's look at what defendant's responses were. Early on in the recording, defendant was told there were allegations of a sexual nature, specifically inappropriate touching. Later when he's asked if he had any type of sexual contact with K.E. he doesn't say no. He says, I know what I know. When asked if he had any kind of relationship with K.E. and it's obvious from the context that that refers to a sexual relationship he doesn't say no. He says, I have a relationship with a lot of people. When asked if he sent an April Fool's Day text message to K.E. he's saying, I told my wife. He doesn't say no, I never sent that message. Instead he says, I send a lot of text messages. And asked about a boyfriend-girlfriend type relationship. He doesn't say no. He says, I don't think so. The trial judge could determine that these messages were incriminating and was within his discretion in admitting them. Further, people would also note that defendant had come to the station voluntarily. He was not under arrest. Throughout the interview it's clear he was not under arrest as they're saying. If there's charges filed, if these allegations are true. And they also explicitly ask for his side of the story in case there's something he could say that would dissuade them from pressing charges. And also, he didn't remain silent. He voluntarily waived his Miranda rights and answered the questions. And the way he did so was incriminating. So, if there are no further questions, the people who would ask that this court affirm defendant's conviction and sentence. I have a question. Sure. Do you disagree with the defendant's argument that there are certain findings that would need to be made in response to a suggestion or a statement by the state that you were relying on a tacit admission? Well, I believe that the state, a state in the angular case, which the people have relied on, the admission must also be relevant. And so here, I believe the trial judge would have to find it relevant, but I believe he did so in finding it admissible. So you say that he does not have to make any other findings because it's alleged to be a tacit admission? I don't believe he needed to make any further explicit findings other than that it was a statement by the party opponent and that it was relevant. But I believe no further findings on the record were required in this case. Okay. Are there any further questions? Thank you. Thank you, Your Honor. Mr. Mines? If I may briefly, the last point first. We continue to insist that there were things that had to be done by both the jury and the judge on a theory of tacit admission when something is brought in as a tacit admission. I don't know further than the Powell case because the Powell case finds reversible error because the trial judge did not find that the defendant would have been in a position where a person would be expected to reply. That was at the end of the court's discussion of the problem with using tacit admissions in a criminal case. Now, whether the defendant was under arrest here or not, he was arrested, by the way, the very minute this interview concluded. After he asked for an attorney, he was immediately arrested. He was not under arrest at the time that he walked in. He was given Miranda warnings, and it's the Miranda warnings, it's the specific advice of Miranda warnings which makes the tacit admission theory so questionable in a criminal case, as I outlined earlier. He's told he has a right to remain silent. To remain silent. Well, no, you don't have a right to remain silent because we've got this tacit admission thing going on. Well, anything you can say can and will be used against you. And by the way, anything you don't say can and will be used against you also under this tacit admission theory. Because of Miranda warnings, because of people's perceptions, even without the Miranda warnings, that they do have a right to remain silent, the tacit admission theory is extremely questionable in criminal cases. That's the point of Powell. That's the point of Graham's discussion. That's the point of McCormick's discussion. It is questionable validity in a criminal case. Now, the states cites the Aguilar case for a very broad statement that any, for a very broad theory, excuse me, that any statement made by the defendant should somehow come in because it's not hearsay. Understandably, it's not hearsay. That's the specific command of 801, of the Illinois Supreme Court rule, it's 801 somewhere, that it is not hearsay. But that doesn't mean that any statement made by the defendant can come in. What if the defendant here had been talking about religion, had been talking about religion forever? It's a statement, but how can it come in? Because, and you don't want to have, the defendant may want to use that, I suppose, to demonstrate that he's a religious man. The state may want to use it because, well, the guy came off, he was a religious man, but he looked more like Jimmy Baker than anybody else. He was smarmy, and he was using his religion as a shield for what he was doing. Just because the defendant has said something doesn't mean that it can come in. And again, here, he was responding to the questions, he could have responded more directly, but the state has not shown a significant probative value to what the defendant said during this interview session. And they cannot, they cannot deal with the prejudice. The prejudice was clearly there. They made a point in regard to the instruction, the short instruction that was given to the jury after this tape was played. I respectfully submit that that instruction was in two respects inadequate, and in at least one respect dead wrong. It was inadequate because there were statements of the police in regard to the evidence. And then the judge gave an example of, well, if they tell you, for example, that they've got really great evidence, you can ignore that. Well, that's not really the problem here. They didn't go there. They were referring to things that the jury knew they would have had. They were referring to text messages, and the jury knew there were text messages. So it was not something that they were making up or referring to really great evidence and may have been exaggerating. They were talking about things they had. Well, of course, that's precisely the problem with prior consistent statements. When they talked about what they had and truthfully and accurately talked about what they had, that was the problem because they were referring to prior consistent statements. They were told about, to focus on the responses and actions of the defendants. But they were given no further instruction in terms of what to do. And they certainly were not given any instructions on the tacit admission theory about what they had to do and how they should focus upon the responses and actions of the defendant. Two respects inadequate. One was wrong because when you talk about focuses on responses and actions of the defendant, you cannot focus on the action of the defendant to the extent that he remained silent, to the extent that he indicated an unwillingness to talk, and to the extent that ultimately he requested an attorney in the case. There was no probative value to the statements made by the defendant in that taped interview. The prejudice was abundant. In this close case, the admission of that videotape as well as the admission of the text messages ultimately requires reversal and retrial if this court is not reversed outright. Thank you. Thank you. We will be taking a short recess and taking the matter under advisement, hopefully rendering the decision without undue delay.